

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MALCOLM FALLIN,

    Plaintiff,

v.                          Civil Action No. 3:21-cv-131

VIRGINIA DEPARTMENT
OF TRANSPORTATION

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the MOTION FOR SUMMARY JUDGMENT (the "Motion") (ECF No. 28) and accompanying MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 29), filed by Virginia Department of Transportation ("VDOT") against Plaintiff Malcom Fallin. By ORDER (ECF No. 54), the Motion was granted. This Memorandum Opinion sets out the reasons for that decision.

## BACKGROUND

### I. Factual Background

Fallin is an African-American male who is now, and, who was at the time at issue, working as a Transportation Operation II ("T.O. II") with VDOT where he had been employed for over 25 years. ECF No. 1 ¶¶ 1, 2; ECF No. 29 ¶ 1. Fallin began working at VDOT in 1994 as a crew member in the Lottsburg Area Headquarters ("LAHQ"), which is in Northumberland County and part of VDOT's

Fredericksburg District.  ECF No. 52 ¶ 2.  Fallin's duties as T.O.
II included maintaining and patching roads, mowing, cleaning
ditches, and operating equipment such as backhoes and motor
graders.  Id. ¶ 3.

The T.O. III position requires the employee to engage in
"emergency response, requiring work in and outside normal work
hours during emergency operations." ECF No. 1 ¶ 12.  According to
the job application, the minimum qualifications to work as a T.O.
III include:

> (a) considerable knowledge of highway maintenance and
> construction practices and procedures; (b) considerable skill
> in operating and maintaining light, medium, and heavy-duty
> equipment used in highway maintenance construction; (c) basic
> recordkeeping and computer skills; (d) ability to plan,
> schedule, and complete work assignments; (e) ability to train
> and lead the work of others; (f) ability to perform manual
> labor including frequent lifting up to 50 pounds and to use
> hand and power tools; (g) ability to read, interpret, and
> apply work zone safety and traffic control manuals; (h)
> ability to obtain CDL and DOT medical card within 6 months of
> employment and maintain thereafter; (i) ability to work
> inclement weather, accidents, and emergency / disaster
> response; and (j) valid driver's license.
>
> Preferred qualifications to work as a T.O. III include:
>
> (a) experience leading the work of and training others; (b)
> experience supporting emergency operations such as snow
> removal, storm damage and accident clean up; (c) experience
> using computers to read email and record data; (d) experience
> preparing reports and keeping records; and (e) high school
> diploma or GED preferred; equivalent experience or training
> may substitute.

In 2008, Fallin applied for, and was offered, the position of T.O. III, but he declined to accept it.  From 2016 to 2019, Fallin applied three times to be promoted from T.O. II to T.O. III.  Id. ¶ 1.  The only application at issue in this case is the one that Fallin filed in 2019.  The other circumstances of the applications are discussed because Fallin refers to them in his argument that VDOT's legitimate nondiscriminatory reason for promoting someone else in 2019 was pretext for racial discrimination.

**A. The 2008 Application and Offer (Inmate Crew Leader)**

In 2008, Fallin applied for and was offered a promotion to Inmate Crew Leader, a T.O. III position.  ECF No. 52 ¶ 7.[1]  The parties agree that the initial offer included a proposed salary increase of 10 percent that was increased to 12 percent after negotiations occurred between Fallin and Rob Miller, a Maintenance Transportation Officer who was involved in the hiring decision.  ECF No. 52 ¶ 6.[2]  The parties also agree that Fallin unsuccessfully negotiated for a salary increase of 15 percent and that he ultimately rejected the position.  ECF No. 52 ¶ 9.[3]  Notwithstanding

---

[1]    See also ECF No. 29 ¶ 6 (Fallin Dep., ECF No. 29-33 at 138:20-139:6; 141:10-142:24); ECF No. 33 at 4.

[2]    See also ECF No. 29 ¶ 7 (Fallin Dep., ECF No. 29-33 at 142:15-143:10); ECF No. 33 at 4.

[3]    The parties dispute, however, Fallin's reason for declining the 2008 promotion offer.  Compare ECF No. 29 ¶¶ 8-9 with ECF No. 33 at 4, 9, ¶ 3-4.  Fallin says that he declined the offer because he would have been the lowest paid T.O. III and that he would have

3

Fallin's grievances, both parties confirm that he ultimately refused the promotion twice.

## B. Maintenance Supervisor Training Program ("MSTP")

Since 2012, VDOT has maintained a year-long training program for Fredericksburg District crew members called the Maintenance Supervisor Training Program ("MSTP"). ECF No. 52 ¶ 12. The program has two features: a classroom portion covering relevant curriculum and an on-site training portion where participants receive hands-on instruction on VDOT systems and fieldwork. Id. ¶ 13.

The parties dispute what skills are primarily taught during the MSTP and whether additional computer training at the employee's local headquarters is outside the purview of the formal MSTP.[4] The

---

had a commute of 40 to 50 minutes duration. ECF No. 33 at 4. Fallin claims that a VDOT manager told him to apply again and that he would receive a 15 percent raise. Id. Fallin applied again, did not receive the salary raise, and rejected the offer for a second time. Id. He then filed a grievance claiming the salary negotiations "violated his human rights." ECF No. 29 ¶ 9; Employee Grievance Procedure, ECF No. 29-27 (Fallin states "unfair hiring practice/violation of rights"). Fallin's claim was dismissed as a result of VDOT's Third Step Resolution Response, which determined the salary offer was "negotiated with [Fallin] but [he did] not accept the outcome." The District Administrator informed Fallin that he could "find no reason to increase [Fallin's] salary in his current position as the salary offer was predicated on [Fallin] accepting more responsibilities and accomplishing the requirements of a Transportation Operator III on a permanent basis." Id. at 10-11. All of this is immaterial to Fallin's position on summary judgment.

[4]      Compare ECF No. 29 ¶¶ 13-14 with ECF No. 33 ¶¶ 6-7.

parties also dispute whether the purpose of the MSTP is to make employees more competitive for promotions to supervisory-level positions.[5]  Those disputes are not material because the parties agree that completion of the program is not a requirement and that participation in the MSTP does not guarantee a promotion nor does failure to participate in or complete the MSTP automatically exclude a promotion.[6]

In 2014, Fallin applied to participate in the MSTP, and the application was approved by Todd Vanlandingham, the VDOT Superintendent of Northumberland County.[7]  Fallin completed the classroom component of the MSTP and was placed at the Brookvale Area Headquarters where Chris Basye supervised his on-site training.  ECF No. 52 ¶ 17.  Both parties agree that Fallin did not complete on-site training, but they offer different reasons why he failed to do so.[8]

---

[5]    Compare ECF No. 29 ¶ 11 with ECF No. 33 ¶ 5.

[6]    ECF No. 29 ¶ 15 (citing Fallin Dep., ECF No. 29-33 at 176:9-177:7); ECF No. 52 ¶ 16.

[7]    Vanlandingham began working at VDOT in 1998 as a crew member and was promoted to Supervisor of LAHQ.  ECF No. 29 ¶ 4.  In 2004, Vanlandingham was promoted to Superintendent of Northumberland County and was succeeded in the Supervisor role at the LAHQ by others, including William Douglas who held the position from 2012 through 2017.  Id. ¶ 5.  The current Supervisor is Thomas "Chris" Basye.  Id.

[8]    Compare ECF No. 29 ¶ 17 with ECF No. 33 at 5-6, ¶ 8.

Apparently Fallin did not have time to devote to the on-site training so he met with Basye and David Brown, the residency engineer for the Northern Neck residency. According to Fallin, Brown said he would talk to Vanlandingham "to make sure that [Fallin] g[o]t in the office and g[o]t training."[9] The parties agree that Fallin and Vanlandingham met thereafter and that Vanlandingham informed Fallin that he could receive extra training in Lottsburg.[10]

Fallin says that Vanlandingham never scheduled the training but concedes that he never pursued the matter of additional training with Vanlandingham. Fallin also agrees that he never asked Vanlandingham to schedule computer training several days in advance before the work schedule was made.[11]

---

[9]   ECF No. 29 ¶ 19 (referencing Fallin Dep., ECF No. 29-33 at 66:9).

[10]   Id. (referencing Fallin Dep., ECF No. 29-33 at 67:6; Plaintiff's Discovery Responses, ECF No. 29-29 at 2; Vanlandingham Dep., ECF No. 29-36 at 133:18-134:6); ECF No. 52 ¶ 21.

[11]   ECF No. 29 ¶ 19 (referencing Fallin Dep., ECF No. 29-33 at 67:19-68:7; 72:21).

## C. Fallin's 2016 and 2017 Applications for Promotion to T.O. III

In March 2016, a Maintenance Crew Leader position, classified as T.O. III, became available for the first time at the LAHQ. ECF No. 52 ¶ 20. This position oversees work crews but has no actual managerial authority. Id. ¶ 20; ECF No. 29 ¶ 20 (referencing Fallin Dep., ECF No. 29-33 at 17:20-18:7). Daniel Brown, the residency engineer, was in charge of the application process. Joan Spangler, the Senior Human Resource Consultant, assisted Brown in filling the vacancy. ECF No. 52 ¶ 21. The minimum qualifications for the listed position included "considerable knowledge of highway maintenance and construction practices and procedures[,]" and "skill in the use of computers and software applications." Id. ¶ 22.

Two Caucasian and two African-American applicants, including Fallin, were selected to interview for this position. ECF No. 52 ¶ 23. The interview panel consisted of Spangler (Caucasian), Tracey Stewart (Caucasian), Keith Washington (African-American), and David Brown (Caucasian). Id. ¶ 24. The panel unanimously selected Michael Bryant, a Caucasian male, to fill the position based on his supervisory experience and "because he demonstrated his experience operating heavy equipment, building rural roads, and performing highway maintenance, paving, mowing, snow removal, and emergency operations." ECF No. 29 ¶¶ 26-28.

In March 2017, Bryant was promoted from T.O. III to Supervisor at LAHQ. Fallin, Michael Moss, and four others were selected to interview for the T.O. III position vacated by Bryant's promotion. Two of the applicants were African-American and four were Caucasian. ECF No. 52 ¶¶ 26-27. Three Caucasian individuals, including Vanlandingham, and one African-American individual comprised the interview panel. Id. ¶ 29; see also Fallin Dep., ECF No. 29-33 at 98:11. The panelists attest that both Fallin and Moss were qualified, but unanimously agreed that Moss was better suited for the position because he was already employed as Maintenance Crew Leader T.O. III at another location. ECF No. 29 ¶¶ 33, 37, 39. The panel considered that Moss offered "very detailed, very precise" answers to the interview questions, whereas Fallin's responses were "incomplete," and "did not demonstrate the higher level of leadership and technical experience needed to accomplish the duties of [the T.O. III] position." Id. ¶¶ 37-38. Vanlandingham shared with Fallin that he did not get the promotion because he did not interview well. Fallin concedes that he did not ask any follow-up questions. Id. ¶ 40 (referencing Fallin Dep., ECF No. 29-33 at 108:20); ECF No. 52 ¶ 31.

**D. 2019 Application and Decision**

In July 2019, Moss was promoted from T.O. III to Supervisor at Brookvale Area Headquarters, creating another T.O. III vacancy. ECF No. 52 ¶ 32. Similar to the job requirements listed in 2016 and 2017, the 2019 position required the applicant to have construction and equipment experience, as well as recordkeeping and computer skills. Id. ¶ 33.

Fallin was one of three applicants interviewed and the only African-American. Id. ¶ 35. Spangler, Vanlandingham, and Keith Johnson, the Superintendent of King George County who is African-American, were on the interview panel. Id. ¶ 36. The panelists relied on an interview questionnaire form to record each candidate's responses during the interview as well as the interviewers' reactions to the responses and to the interview as a whole. This form contained checkboxes that rated the candidate's answer as "Exceeds Requirements," "Meets Requirements," "Less than Requirements," and "Clearly Misses Requirements." Id. ¶ 37.

The interview panel unanimously agreed that Brian Robinson was the best candidate. Id. ¶ 38. Johnson rated Robinson's answers as "Meets Requirements" for all the questions except the safety inquiry, which was left blank. Id. ¶ 39; ECF No. 29 ¶ 48; 2019 Johnson Interview Notes, ECF No. 29-31 at 3. Spangler rated Robinson as "Exceeds Requirements" in software proficiency and roadway construction experience. ECF No. 52 ¶ 40. Vanlandingham

9

rated Robinson's answers as "Meets Requirements" for all the interview questions.  Id. ¶ 41.  The record does not show any dispute as to whether a significant reason for promoting Robinson over Fallin was Robinson's experience as a co-owner and foreman of an excavation company for approximately ten years where he gained substantial experience in road construction, operating heavy equipment, and managing employees.  Id.  Nor is it disputed that Robinson had been with VDOT for nine years as a crew member, had completed the MSTP, and gave detailed and prepared answers during his interview.  Id. ¶ 41-44.

## II. Procedural Background

In March 2021, Fallin filed the Complaint in this action, alleging two counts under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.: COUNT I alleged a discriminatory failure to promote (2019); and COUNT TWO alleged a claim for discriminatory denial of training.  In July 2021, the Court granted DEFENDANT VDOT'S PARTIAL MOTION TO DISMISS COUNT II OF THE COMPLAINT (ECF No. 7).  As a result, COUNT II was dismissed with prejudice.  See ORDER (ECF No. 13).

In December 2021, after the completion of discovery, VDOT filed DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 28) and an accompanying MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 29).  Fallin timely responded and VDOT replied.  See PLAINTIFF'S MEMORANDUM IN OPPOSITION TO

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 33); DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (ECF No. 45). Several exhibits submitted with the briefings have been sealed. See ECF Nos. 33-43. The parties have also submitted a Joint Statement of Facts. See JOINT WRITTEN STIPULATIONS OF UNCONTROVERTED FACTS (ECF No. 52).

## DISCUSSION

VDOT moves for summary judgment on COUNT I: Failure to Promote because (1) the record shows that: (a) Fallin was not the superior candidate; and (b) VDOT had a legitimate nondiscriminatory reasons for the 2019 promotion; and because (2) there is no triable issue as to whether VDOT's proffered nondiscriminatory reason for not selecting Fallin was a pretext for discrimination.

### I. Summary Judgment Standard

Summary judgment is to be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the Court of the basis for the motion and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings,

11

depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. Anderson, 477 U.S. at 251 (citing Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." Id. (quoting Munson, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992)); see Fed. R.

12

Civ. P. 56(c)(3) ("The court need consider only the cited materials").

## II. Summary Judgment on Title VII Claims

Title VII prohibits employers from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment because of such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1). "To survive a motion for summary judgment on a Title VII disparate treatment claim, a plaintiff must either proceed under the mixed-motive framework or the McDonnell Douglas burden-shifting framework." Sempowich v. Tactile Sys. Tech., Inc., 19 F.4th 643, 649 (4th Cir. 2021). In this case, both parties agree that the burden-shifting framework applies because Fallin has not produced direct evidence of discrimination. Id.

"Under the burden-shifting framework, a plaintiff must first offer a *prima facie* case." Id. "Once a plaintiff makes out a *prima facie* case, the burden shifts to the employer to put forth a nondiscriminatory explanation for its actions. If the employer does so, the burden then shifts back to the plaintiff to show that the employer's explanation was actually a pretext for discrimination." Id. at 650. The ultimate burden of persuasion "remains at all times with the plaintiff." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000) (internal citations and quotation marks omitted).

Local Civil Rule 56(b) requires that the brief of a party seeking summary judgment include a detailed, and documented (by citation to the record), listing of material facts that the moving party thinks are not genuinely in dispute. The local rule requires the response brief to respond by identifying, with like documentation, material facts as to which there is a genuine dispute.

VDOT specified 58 material facts that it thought were undisputed. Fallin agreed with 21 of those. As to another 25 (which were citations to depositions or documents), Fallin merely responded that the "deposition testimony and/or document speaks for itself," thereby functionally acknowledging the lack of any dispute because the deposition testimony was correctly cited in VDOT's papers. Fallin took issue with 13 of VDOT's asserted undisputed facts. See generally ECF No. 33.

However, as explained below, VDOT admits that Fallin has made out a *prima facie* case; and Fallin admits that VDOT has proffered a legitimate nondiscriminatory reason for not promoting Fallin. Thus, the differing views of the parties pertain only to the issue: whether VDOT's allegedly nondiscriminatory reason for not promoting Fallin is a pretext for racial discrimination. Whether those differences constitute genuine disputes of material fact and, if so, whether such disputes preclude summary judgment

14

therefore pertain to Fallin's pretext argument, and will be assessed thusly.

## A. Fallin Has Established a *Prima Facie* Case for Discrimination

Under the burden-shifting approach, Fallin must first demonstrate the *prima facie* elements of a failure-to-promote claim. Sharif v. United Airlines, Inc., 841 F.3d 199, 203 (4th Cir. 2016). VDOT recognizes that Fallin "has met his initial burden because he is [African-American], he applied for the [T.O. III] position, he was qualified for the position when he was selected for an interview, and 'someone outside of the plaintiff's protected group ultimately was selected for the position.'" ECF No. 29 at 15-16 (quoting Langerman v. Thompson, 155 F. Supp. 2d 490, 495 (D. Md. 2001)). Further inquiry is not required on that aspect of the analysis.

## B. VDOT Has Tendered a Nondiscriminatory Reason for Not Promoting Fallin

The burden "then shifts to the employer to . . . provide some legitimate, nondiscriminatory reason for the [contested,] adverse employment action." Sharif, 841 at 203 (internal citation and quotation marks omitted). "In evaluating employer intent and the question of pretext, the district court may consider 'among other things, the historical background of the . . . decision; [t]he specific sequence of events leading up to the challenged decision; [d]epartures from the normal procedural sequence; and . . . [any]

contemporary statements by members of the decisionmaking body.'" Id. at 205 (quoting Reno v. Bossier Parish Sch. Bd., 520 U.S. 471, 489 (1997)).

VDOT asserts that the hiring panel's belief that Robinson was the most qualified candidate for the T.O. III position is a legitimate nondiscriminatory reason for not selecting Fallin. ECF No. 29 at 16. To substantiate this rationale, VDOT relies on the deposition testimony of the panelists and their contemporaneous notes. For instance, Vanlandingham stated that Robinson was promoted, in part, because LAHQ required "someone with extensive experience with heavy equipment [and] construction experience," and that "Robinson had all of the qualifications[,] not only with VDOT but in his past work experience . . . ." Id. at 17 (referencing Vanlandingham Dep., ECF No. 29-36 at 149:4). Additionally, Spangler stated that Robinson had "[e]xtensive [experience] in road building and site construction" from his VDOT career and "other previous employment that was roadway construction [and] pipe installation." Id. (referencing Spangler Dep., ECF No. 29-35 at 75:20-76:7). Further, Johnson noted that, even though all candidates were qualified, Robinson "had more experience . . . overseeing projects" than other candidates. Id. (referencing Johnson Dep., ECF No. 29-34 at 84:15-85:3).

For his part, Fallin "does not dispute that VDOT put forth an alleged nondiscriminatory explanation for its decision not to

[promote him] in 2019." ECF No. 33 at 13. Thus, further examination is not required on that aspect of the burden-shifting analysis.

## C. Whether Fallin Has Put Forth Evidence from Which Pretext Could be Found by a Reasonable Jury

Now that Fallin has established a *prima facie* case (as VDOT has acknowledged) and VDOT has tendered nondiscriminatory reasons for the challenged employment action (as Fallin has acknowledged), Fallin must show that there is evidence sufficient "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); Sharif, 841 F.3d at 203 ("[T]he plaintiff resumes the burden of persuading the factfinder that the employer's proffered explanation is merely a pretext for discrimination").

"[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." Reeves, 530 U.S. at 147. "The plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" Id. (quoting Burdine, 450 U.S. at 256). "Moreover, although the presumption of discrimination 'drops out of the picture' once the

defendant meets its burden of production, . . . the trier of fact may still consider the evidence establishing the plaintiff's *prima facie* case 'and inferences properly drawn therefrom' . . . on the issue of whether the defendant's explanation is pretextual[.]" Id. (internal citations omitted); see also Reeves, 530 U.S. at 148.   Accordingly, the Court must consider several factors, including "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case." Reeves, 530 U.S. at 148-49.

A "plaintiff alleging a failure to promote claim can prove pretext by <u>showing that he was better qualified</u> <u>or</u> amassing <u>circumstantial evidence</u> that otherwise <u>undermines the credibility</u> of the <u>employer's stated reasons</u>." Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 259 (4th Cir. 2006) (internal citations omitted) (emphasis added).   Therefore, the question now is "whether there is sufficient evidence of pretext" to allow a jury to decide that VDOT's failure to promote was attributable to discrimination. Id.   For the reasons set for the below, Fallin has not overcome the burden of establishing that VDOT's rationale for hiring Robinson instead of Fallin was mere pretext because he has (1) admitted that he was not better qualified than Robinson and (2) not submitted circumstantial evidence that undermines the credibility of VDOT's proffered reasons for promoting Robinson.

## 1. Better Qualified

VDOT has made a strong case that there is no basis in the record to support a finding that Fallin was demonstrably more qualified for the T.O. III position than Robinson. VDOT's proffered rationale for choosing Robinson is included in the hiring panel's Candidate Evaluation Forms, Personnel Action Worksheets, and deposition testimony, which demonstrate that Robinson was the superior candidate. In particular, Robinson's Candidate Evaluation Form and Personnel Action Worksheet highlight his completion of the MSTP in addition to his "extensive experience in road construction and operating heavy equipment" as justifications for choosing him for the promotion. ECF No. 29-17; see also 2019 Completed Personnel Action Worksheet, ECF No. 45-3 at 6 (Robinson "was a graduate of the Maintenance Supervisor Training Program" and "has an additional 20 years of directly related experience as a Heavy Equipment Operator while installing pipe, road building and installing curb and gutter.").

That record evidence notwithstanding, Fallin's brief argues that he was more qualified than Robinson because Fallin has more T.O. II experience, significant experience with heavy equipment, and good job performance evaluations in 2017-18 and 2018-19. However, a plaintiff "cannot establish pretext by relying on criteria of h[is] choosing when the employer based its decision on other grounds." Anderson, 406 F.3d at 271. Fallin has not

19

submitted any evidence from which a jury could find that he was more qualified than Robinson.   Moreover, Fallin, unequivocally admitted that he could not say that he was the superior candidate compared to Robinson.   Fallin Dep., ECF No. 29-33 at 128:5. ("I wouldn't say I was a superior candidate, I'd say I was a good candidate for that position.").   This acknowledgement means that no reasonable jury could find that Fallin was better qualified than Robinson.[12]

## 2. Circumstantial Evidence Respecting Whether a Jury Could Find VDOT's Legitimate Nondiscriminatory Reason Was Pretext for Racial Discrimination

Fallin correctly contends that pretext can be shown "'by amassing other circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons' for his non selection for the 2019 [T.O. III] position." ECF No. 33 at 15 (quoting Heiko, 434 F.3d at 259).   "A plaintiff can show pretext through evidence that the employer's reasons . . . [']are inconsistent over time, false, or based on mistakes of fact.'" Cannada v. Old Dominion Brush, Co., Inc., No. 3:20-CV-952, 2021 WL 5441506, at *6 (E.D. Va. Nov. 19, 2021) (quoting Haynes v. Waste Connections, Inc., 922 F.3d 219, 225 (4th Cir. 2019)).   "The fact that an employer has offered inconsistent post-hoc explanations

---

[12]   It is beyond dispute that Fallin's acknowledgement on that point trumps the arguments to the contrary made by Fallin's counsel in the response brief for summary judgment.

for its employment decisions is probative of pretext," which may be evidenced through depositions. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 647 (4th Cir. 2002) (internal citation omitted).

According to Fallin, this circumstantial evidence includes VDOT's allegedly inconsistent reasons for promoting Robinson over Fallin, including that: (1) "Vanlandingham claimed [that Fallin] did not get the position because he had not completed MSTP" and that "Vanlandingham did nothing to assist [Fallin] to complete MSTP, and Vanlandingham's prior initiation of a disciplinary action against [Fallin] in 2010 related to scheduling chilled Plaintiff's efforts to schedule such training;" (2) in his deposition, "Vanlandingham alleges the most important qualification for the position was experience with heavy construction equipment" and that Plaintiff lacked that experience despite VDOT's previous statement in his performance evaluations that "[Fallin] has twenty-three years VDOT experience operating heavy equipment'"; and (3) that the hiring panel "expressed concern about [Fallin's] computer skills" but "the job posting merely required '[b]asic recordkeeping and computer skills,' which VDOT has repeatedly acknowledged Plaintiff possessed." ECF No. 33 at 14-16 (internal citations omitted). Plaintiff adds that (4) "there has never been an African-American selected as a [T.O. III], a supervisor, or a superintendent in LAHQ." Id. at 16.

VDOT relies on the record to refute Fallin's alleged circumstantial evidence theory.  Upon examination, the record does not provide circumstantial evidence that would permit a reasonable jury to conclude that VDOT's proffered reasons for promoting Robinson over Fallin were a pretext for discrimination.

First, VDOT asserts that Fallin's rationale for not completing the MSTP does not undermine the hiring panel's decision to promote Robinson over Fallin because: (1) the onus was on Fallin to follow-up on Vanlandingham's offer and approval to continue training; and (2) Fallin conceded a lack of computer proficiency as compared to Robinson's superior qualifications.  ECF No. 45 at 16-17.  To support its position, VDOT points out that the record is that:  (1) Fallin admits that he never asked Vanlandingham to organize the work schedule to facilitate Fallin's computer training;[13] (2) Fallin does not even allege that Vanlandingham somehow "prevented him from completing on-site training;" and (3) Fallin was of the view that "he was proficient enough with VDOT systems to apply for the [T.O. III] position" without further computer training.[14]

---

[13]   Id. (referencing Fallin Dep., ECF No. 29-33 at 72:21).

[14]   Id. at 19 (referencing Fallin Dep., ECF No. 29-33 at 79:3, 96:9, 117:19-118:8).

Second, VDOT argues that Fallin has failed to produce evidence that the hiring panel contemplated performance evaluations during the promotional interview process and has not provided evidence indicating that his own experience with heavy equipment is preferable to Robinson's experience. ECF No. 45 at 15-16.

Third, although VDOT concedes that Fallin's lack of computer skills factored into the hiring panel's review process, but VDOT argues that this point is not material because Fallin's computer proficiency was not the determinative factor in the promotion decision. See ECF No. 29 at 20 (referencing 2016 Spangler Interview Notes (Fallin), ECF No. 29-9). Robinson's experience with heavy equipment, according to VDOT and the evidence in the record, was the influential factor. Id. at 10, 15.

Finally, VDOT provides evidence that African-American "VDOT employees constitute a higher percentage of total [T.O. III] crew leaders in Fredericksburg District than total applicants for those positions." Id. at 22. Notwithstanding the racial configuration of the employee base, VDOT alleges that Fallin was up against highly qualified candidates who possessed credentials that Fallin lacked when he applied for T.O. III positions in 2016, 2017, and 2019. Id. Further, VDOT notes that Fallin's inability to obtain a promotion as Maintenance Crew Leader in 2016 and 2017 is not probative of the hiring panel's decision in 2019 because Fallin had previously been offered a promotion twice in 2008. Id. at 20.

A reasonable jury could not find that circumstantial evidence on which Fallin relies proves that VDOT's admittedly legitimate non-discriminatory reasons was pretext for a decision made because of racial discrimination.  The hiring panel ascertained that Fallin "had limited experience with timesheets and using computers while in the MSTP[,]" that he "did not complete the program[,]" and that Fallin "failed to convey the depth and breadth of his extensive experience[.]"  ECF No. 29-16.[15]  Fallin attempts to refute those points by arguing that VDOT should have not considered completion of the MSTP in determining who should receive the promotion.  However, Fallin may not "choose the criteria by which an employer makes a promotion decision."  Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 270 (4th Cir. 2005).  Likewise, Fallin does not substantiate that he would have received the 2019 promotion even if he had completed the MSTP and, indeed, he concedes as much in the Joint Statement of Facts.[16]

---

[15]   Compare 2019 Robinson Interview Summary, ECF No. 29-17 ("Brian has completed the MSTP") with 2019 Fallin Interview Summary, ECF No. 29-16 ("When describing his experience preparing work orders and reports he stated that he had limited experience with timesheets and using computers while in the MSTP. Mr. Fallin's Superintendent stated that although he did enroll in the MSTP, in 2014 he voluntarily withdrew and did not complete the program").

[16]   "Vanlandingham believed that Fallin would not have been considered the top candidate even if he had completed the MST Program—i.e., developed proficiency with VDOT's software applications because it was Robinson's heavy equipment experience in the construction business that set him apart from everybody else."  ECF No. 52 ¶ 44.

Nor has Fallin shown that Vanlandingham inconsistently relied on the MSTP as a means to promote Caucasian candidates over him. On that score, Vanlandingham has consistently stated that "[p]articipation in MSTP Program was not required to obtain promotions, but it is seen as a plus." Decl. of John "Todd" Vanlandingham, ECF No. 29-1 ¶ 9; see also ECF No. 52 ¶ 16 ("Participation in the MST Program did not guarantee that a crew member would get a promotion."). Notably, it does not appear that Vanlandingham was on the interview panel that promoted Bryant in 2016. See ECF No. 29 ¶ 21. Although Vanlandingham was on the interview panel in 2017, id. ¶ 23, the interview record does not reference the MSTP. See, e.g., 2017 Posting Details, ECF No. 38 (sealed); Interview Summary Form (Moss), ECF No. 29-24; Interview Summary Form (Fallin), ECF No. 29-25. Therefore, the record could not support a finding by a jury that the application of the MSTP requirement was inconsistent.

Fallin attempts to salvage this claim by arguing that "Vanlandingham did nothing to assist Plaintiff to complete MSTP[.]" ECF No. 33 at 15. That contention does not raise a circumstantial case of pretext because the undisputed record shows that Vanlandingham approved Fallin to participate in the training and offered him additional time to complete his training as requested and that Fallin voluntarily withdrew from the MSTP. ECF No. 29-36 at 22; ECF No. 29-1 ¶ 16; ECF No. 52 ¶ 7.

Moreover, Fallin concedes that he never requested that Vanlandingham organize the work schedule in advance to enable him to complete the in-office training on the computer. Fallin Dep., ECF No. 33-1 at 72:8-12. Fallin's reliance on the 2010 grievance against him as the reason for not asking for the schedule adjustment cannot stand because a different individual (otherwise not named in this case) initiated the grievance against Fallin rather than Vanlandingham. <u>See</u> Written Notice, Ex. 3, ECF No. 35 (sealed). Furthermore, the record shows that, in response to the 2010 grievance, Vanlandingham appears to have defended Fallin by clarifying discrepancies in the grievance record, which ultimately led to the grievant removing the written notice. <u>See</u> ECF No. 45-8 at 9, 15-16 (sealed). No reasonable jury could find in the record what Fallin suggests: that Vanlandingham's conduct respecting the 2010 grievance or the MSTP training is circumstantial evidence of racial discrimination.

Likewise, although Fallin had "more than satisfactory" annual performance evaluations, ECF No. 33 at 15, "the performance evaluation and the interview selection stage, which involves an analysis of how the applicant meets the core and functional competencies of the position that is open, are not interchangeable." <u>Anderson</u>, 406 F. 3d at 272 (emphasis added). Fallin clearly received high praise for his work as an equipment

26

operator from his supervisors;[17] however, he has neglected to produce evidence that the hiring panel contemplated performance evaluations during the interview process and that his experience with heavy equipment at VDOT was superior to Robinson's overall extensive experience in operating heavy equipment.

Further, unlike the 2016 and 2017 job postings, the 2019 job posting highlights that the position required "[c]onsiderable skill in operating and maintaining . . . heavy-duty equipment used in highway maintenance construction", which refutes Fallin's assertion that such emphasis was stated for the first time during Vanlandingham's deposition. Compare 2019 Job Posting, ECF No. 29-13 at 2 with 2016 Job Posting, ECF No. 29-8 at 2 and 2017 Posting Details, ECF No. 38 (sealed) (emphasis added). Additionally, Robinson's Candidate Evaluation Form and Personnel Action Worksheet both validate Robinson's superior experience with operating heavy equipment, indicating that the emphasis arose well before Vanlandingham's deposition. See Performance Evaluation 2018, ECF No. 45-5. Robinson's application also indicates that he "[o]perates heavy equipment." ECF No. 45-7 at 2. Vanlandingham's declaration notes that he "wanted to emphasize experience with heavy construction equipment as a key qualification for the

---

[17]    Indeed, his 2017, 2018 and 2019 Performance Evaluations indicate that he is "skill[ed] in the operation and maintenance of light, medium, and heavy duty equipment used for highway maintenance and repair." Ex. 12, ECF No. 33-12.

position." ECF No. 29-1 ¶ 26. The Verbal Reference Check form, completed by Vanlandingham on August 13, 2019, states that Robinson's primary strengths include "[g]ood equipment operator with years of experience and knowing on all types [of] equipment." ECF No. 29-6 at 2. And, incontrovertibly, the Joint Statement of Facts recognizes the hiring panel's justification for selecting Robinson for the promotion:

> Robinson was the superior candidate because he provided detailed answers that demonstrated the breadth of his experience in operating heavy equipment and managing complex construction projects. . . . What set Robinson apart from the other candidates was that he had been a co-owner and foreman of an excavation company for about ten years where he had extensive experience in road construction, operating heavy equipment, and overseeing employees' time and work duties.

ECF No. 52 ¶¶ 38, 39, 40, 41; see also Johnson Dep. ECF No. 29-34 at 84:15; Spangler Dep., ECF No. 29-35 at 80:5; Vanlandingham Dep., ECF No. 29-36 at 114:13, 148:22-149:21.

The record also puts the sword to Fallin's argument that his tenure at VDOT made him more promotable than Robinson. For instance, the Candidate Evaluation Forms repeatedly point out that Fallin "lacked critical details" when explaining his experience with heavy equipment, whereas Robinson had provided detailed explanations during his interview. Compare Fallin Candidate Evaluation Form, ECF No. 29-16 (completed by Vanlandingham on July 29, 2019 stating that Fallin "failed to convey the depth and breadth of his experience, therefore, he is not being considered

for this position") with Robinson Candidate Evaluation Form, ECF No. 29-17 (completed on July 29, 2019 by Vanlandingham stating that Robinson "was very prepared and his answers were very detailed"). Accordingly, Fallin's 23 years of VDOT experience was "not necessarily determinative of qualifications for [the] promotion." Matias v. Elon Univ., 780 Fed. App'x 28, 31 (4th Cir. 2019)(internal citation and quotation marks omitted).

VDOT is entitled to rely on its sound business judgment to promote Robinson over Fallin. See Heiko, 434 F.3d at 261. And, "[t]he district court cannot substitute its judgment for the employer's" by assuming that Fallin's years of experience and computer proficiency compensates for Robinson's substantial experience with the VDOT computer systems and heavy equipment. Wileman v. Frank, 979 F.2d at 37 (quoting Danzl v. North St. Paul-Maplewood-Oakdale Indep. Sch. Dist. No. 622, 706 F.2d 813 (8th Cir. 1983)). Fallin's papers blur the line between minimum requirements for the job (i.e., being qualified) and the most qualified applicant. That is important here because "[w]hen two applicants meet the minimum educational qualifications of a position, Title VII does not prevent an employer from preferring the applicant who has educational qualifications which surpass the minimum requirements of the position." Wileman v. Frank, 979 F.2d 30, 37 (4th Cir. 1992). Fallin cannot establish a triable issue of pretext by arguing that Robinson's additional computer skills,

including those he gained at the MSTP, should not have been considered in light of Fallin meeting the minimally required computer skills.

Furthermore, and significantly, interview notes from 2019 preserve the rationale behind the hiring panel's promotion of Robinson, eliminating allegations of inconsistencies by those on the interview panel. See, e.g., 2019 Vanlandingham Interview Notes (Fallin), ECF No. 29-4; Vanlandingham Interview Notes (Robinson), ECF No. 29-5; 2019 Spangler Interview Notes 2019 (Fallin), ECF No. 29-14; 2019 Spangler Interview Notes 2019 (Robinson), ECF No. 29-15; 2019 Fallin Interview Summary, ECF No. 29-16; 2019 Robinson Interview Summary, ECF No. 29-17; 2019 Johnson Interview Notes (Robinson), ECF No. 29-31; 2019 Johnson Interview Notes (Fallin), ECF No. 29-32).

The record also refutes Fallin's position that VDOT discriminates against African-American employees generally because the LAHQ, one of nine district headquarters,[18] has never had an African-American T.O. III. Demographic evidence submitted by VDOT shows that between 2015 and 2021, 40 T.O. III positions were filled, "29 of whom are Caucasian and 11 of whom are [African-American]. Caucasian employees represent 72.5 percent of T.O. III candidates and [African-American] employees represent 27.5 percent

---

[18]    ECF No. 52 ¶ 1.

of T.O. III candidates." Decl. of Spangler, ECF No. 29-7 ¶ 36; Spangler Ex. 12, ECF No. 29-19; Spangler Ex. 13, ECF No. 29-20. In other words, based on the overall demographics of VDOT employees, the diversity among T.O. III positions and applicants appear to be congruent to the workforce racial composition.

The Court remains "mindful that we assess relative job qualifications based on the criteria that the employer has established as relevant to the position in question." Heiko, 434 F.3d at 259. The record is clear: no triable issues exist as to whether VDOT's proffered nondiscriminatory reason for not selecting Fallin was a pretext for discrimination. No reasonable juror could conclude that the evidence in the record would permit a finding that Fallin was better qualified than Robinson or that any circumstantial evidence supports a pretense of racial discrimination. Furthermore , "[t]he broad, overriding interest, shared by employer, employee, and consumer, is efficient and trustworthy workmanship assured through fair and . . . neutral employment and personnel decisions." Burdine, 450 U.S. at 259 (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801 (1973)). "Title VII, however, does not demand that an employer give preferential treatment to minorities or women." Id. (referencing 42 U.S.C. § 2000e-2(j)). Further, Title VII, does "not require the employer to restructure his employment practices to maximize the number of minorities and women hired." Id.

(referencing <u>Furnco Constr. Corp. v. Waters</u>, 438 U.S. 567, 577-578 (1978)).   Fallin indisputably has substantial experience at VDOT and is clearly capable of being promoted but, on the record, VDOT legitimately concluded that Robinson was the superior candidate for the T.O. III position.   And, no reasonable jury could find otherwise.

In summary, the Court "simply cannot conclude, based upon the record, that the [VDOT's] proffered justifications for preferring [Robinson] over [Fallin] were so unworthy of credence as to support a finding of discriminatory intent."   <u>Wileman</u>, 979 F.3d at 38. More particularly, the record made here would not permit a reasonable jury to conclude that Fallin has carried the burden assigned to him to put forth evidence that would allow a reasonable jury to conclude that VDOT's decision to promote Robinson because he was better qualified than Fallin was pretext for racial discrimination.

## CONCLUSION

There are no genuine disputes of material fact and the record clearly warrants the conclusion that the DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 28) should be granted.

It is so ORDERED.

                                    /s/   REP
                              _____
                              Robert E. Payne
                              Senior United States District Judge

Richmond, Virginia
Date: February 15, 2022

32